IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

PEGGY LAROCK,

                          Plaintiff,

        vs.                                  Civil Action No.
                                                6:04-CV-0070 (TJM/DEP)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

MASTAITIS LAW OFFICE          STEPHEN J. MASTAITIS, ESQ.
1412 Route 9P
Saratoga Springs, NY 12866

FOR DEFENDANT:

HON. GLENN T. SUDDABY       WILLIAM H. PEASE, ESQ.
United States Attorney for the     Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

OFFICE OF GENERAL COUNSEL    BARBARA L. SPIVAK, ESQ.
Social Security Administration     Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278              ELLEN E. SOVERN, ESQ.
                                   Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Peggy LaRock, who suffers from several medical conditions of significance including myofascial pain syndrome/fibromyalgia, epicondylitis, macular drusen, asthma and irritable bowel syndrome, has commenced this proceeding challenging an administrative determination that she was not disabled at the relevant times, and thus denying her application for Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). In support of her challenge, plaintiff contends that in finding no disability the Administrative Law Judge ("ALJ") deciding the matter at the agency level improperly discounted her subjective pain complaints, which reflect significant limitations in her ability to perform work functions, and additionally mischaracterized certain of the limitations associated with her conditions as exertional, rather than nonexertional limitations which would undermine the ALJ's resort to the medical vocational guidelines set forth in the applicable regulations (the "grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and instead require elicitation of testimony from a vocational expert to determine whether she is capable of performing jobs existing in the national economy.

Having carefully reviewed the record now before the court, in the light of plaintiff's arguments, I find that while the Commissioner's determination resulted from application of proper legal principles, the ALJ's rejection of plaintiff's subjective complaints of disabling pain is not properly explained, warranting reversal of the finding of no disability. Accordingly, I recommend that plaintiff's motion for judgment on the pleadings be granted, and the matter remanded for further proceedings consistent with this opinion.

I.   <u>BACKGROUND</u>

Plaintiff was born on October 2, 1957; at the time of the most recent administrative hearing in this matter, she was four days short of turning forty-seven years of age. Administrative Transcript at pp. 84.[1]  Plaintiff is married, and lives with her husband and three of her four children, ranging in age from twelve to twenty-one, in Comstock, New York. AT 26, 29-30. Plaintiff is a high school graduate, and additionally has undergone some Board of Cooperative Educational Services ("BOCES") training in the secretarial area. AT 122.

---

[1]      Portions of the administrative transcript of evidence and proceedings before the agency (Dkt. No. 17), filed by the Commissioner together with her answer in this action, will be cited in this decision as "AT ___".

Over the years, plaintiff has had relatively little work history. Plaintiff's last employment of significance was as the operator of a day care facility in her home.  AT 25.  Plaintiff discontinued her day care operation in 2000, in light of the arrival of a son born with a variation of Down's syndrome as well as congenital leukemia.  AT 25, 149, 223. Plaintiff also held various intermittent employment before that time as a machine operator in a medical plant, as a teacher's aide, as a secretary, and in various positions with a shirt manufacturing company.  AT 117.

Over time, plaintiff has suffered from a variety of medical conditions. Plaintiff has a documented history of irritable bowel syndrome ("IBS"), which causes fluctuations in her weight and typically manifests itself by causing her to suffer from constipation.  AT 28, 149.  Plaintiff reported to Dr. Howard P. Fritz, a gastroenterogical specialist to whom she was referred in April of 2000, that she has suffered from IBS since being in the fifth grade and has been on medication for that condition for a long period of time.  AT 149-50.  Flexible sigmoidoscopy testing conducted by Dr. Fritz in April of 2000 proved negative with the exception of "a slightly raised red area" which, it was determined, could possibly represent a small polyp.  *Id.*  Following that testing, plaintiff was continued on various

medications and was advised by Dr. Fritz to "diminish personal stress."
*Id.*

Plaintiff also has a reported history of experiencing allergies and asthma, reportedly suffering asthma attacks between three and four times per month.  AT 198.  Plaintiff takes several medications for those conditions, including Azmacort, Flonase, Singulair, Claritin, Albuterol, Lodrane, Loratadine, Hydrocortisone, and Ventolin, as well as Patanol eye drops, and states that her allergies are generally well controlled.  AT 34-36; *see also* AT 198-99, 418.  According to a consultative report authored by Dr. George Wootan, plaintiff is able to recognize the symptoms of an impending asthma attack and, through the use of an inhaler, can address her symptoms within a period of between ten and fifteen minutes.  AT 198.

Plaintiff has also been diagnosed as suffering from macular drusen, a symptom of visual impairment.[2]  Plaintiff underwent an ophthalmologic examination by Dr. Mark Hite, of Glens Falls Eye Associates, P.C., in May of 2000 to address her vision issues.  AT 161.  Dr. Hite assessed

---

[2]      Macular drusen are yellow deposits in the central portion of the retina (the macula) that commonly indicate macular degeneration.  Macular drusen can cause dimming or distortion of vision.  In some cases, macular degeneration can lead to blind spots and loss of central vision.  *See* http://www.webmd.com/content/Article/63/72004.htm.

plaintiff's visual acuity as 20/20 in both eyes, though discerning the presence of highly myopic refraction. *Id.* That examination also reflected mild presbyopia, with some accommodative insufficiency. *Id.* During a follow-up visit in June of 2000, Dr. Hite noted that plaintiff has substantial macular drusen in both eyes, but found no evidence of macular edema or neovascularization. AT 160. Dr. Hite found no true distortion in plaintiff's vision, although he did refer to reports by the plaintiff that she experiences "some doubling and ghosting to images." *Id.* In his report of that visit, Dr. Hite speculated that plaintiff's vision problems may stem from her use of Amitriptyline to address other of her health concerns. *Id.*

Over time plaintiff has also experienced various problems with her hands and other portions of her upper extremities. *See*, *e.g.*, AT 182, 183. While plaintiff's symptoms were at one time regarded as suggestive of bilateral carpal tunnel syndrome, nerve conduction studies undergone by the plaintiff proved normal, ruling out such a diagnosis as well as the possibility of cervical radiculopathy. AT 186. An examination of the plaintiff conducted in January of 2001 reflected that she did not appear to be in acute distress, and resulted in a diagnosis of probable low grade tendonitis and/or arthritis. AT 184-85.

In or about 2003, plaintiff began to experience difficulties with her left thumb.  AT 374, 377.  Upon examining the plaintiff on January 20, 2004 rheumotologist Dr. James Yovanoff diagnosed her as suffering from osteoarthritis and myofascial pain, and recommend a referral for an opinion regarding the possibility of CMC joint arthroplasty.  AT 380.  After steroid and cortisone injections proved unsuccessful in addressing the pain, on April 29, 2004 plaintiff underwent arthroplasty of the left thumb by Richard Saunders, M.D.  AT 23-24, 412.  Plaintiff's condition was diagnosed as bilateral CMC arthritis, and radiographs conducted prior to the surgery reflected "fairly severe degenerative changes in the CMC joints bilaterally."  AT 418-20.  An office note authored by a registered physician's assistant on June 28, 2004, some two months post surgery, reflects that by then plaintiff's thumb exhibited "excellent range of motion" though with some residual weakness to grip as would be expected shortly following surgery.  AT 408.

Plaintiff also suffers recurrent headaches, described by her as "piercing" and causing the side of her head to become numb.  AT 47-48.  Plaintiff was examined neurologically on April 30, 2003 by Vinodrai M. Parmar, M.D.  AT 361-63.   At that time plaintiff reported to Dr. Parmer

that she had suffered headaches for a period of five years or longer, of increasing severity.  *Id.*  The results of that examination, however, were largely benign, leading Dr. Parmar to conclude that plaintiff was suffering from both "common migraine and muscle-contraction headache."  *Id.*  Plaintiff was advised to discontinue taking Motrin, due to the possibility of rebound headaches, and to initiate a walking program.  *Id.*

Plaintiff has also complained at times of other various aches and joint pains.  Although the documented pain reports are largely limited to her upper extremities, plaintiff also claims to experience swelling and pain in her back and knees.  AT 128, 143, 199.   While some reports in the record make reference to observations of mild swelling, including in plaintiff's knees, *e.g.,* AT 407, examinations by both treating and consulting physicians of her back and lower extremities have been overwhelmingly unremarkable.  *See* AT 200, 208, 223, 271-75, 284, 286, 288, 425.  Aside from the isolated reports of observed swelling, the only clinical evidence in the record bearing upon any lower extremity issues in the form of the results of x-rays of plaintiff's lumbar spine area in August of 2004, which revealed minimal degenerative disc disease.  AT 425.  Based upon plaintiff's complaints regarding her pain, one of her

physicians, Dr. James Wovanoff, has diagnosed her as suffering from probable myofascial pain syndrome/fibromyalgia.  AT 223-24.  Plaintiff's condition, however, has consistently been described as stable, *e.g.*, 271, 273-75, 286, 288, 380, 396, and only occasionally have any soft tissue tender points been discerned.  AT 273.

In addition to her treating physicians, plaintiff has been examined consultatively on several occasions.  Plaintiff was seen by Dr. George Wooten, as a request of the agency, on February 27, 2001.  AT 198-201. Based upon his examination Dr. Wooten noted that plaintiff did not appear to be in acute distress, exhibiting a normal gait and the ability to walk on heels and toes without difficulty, and diagnosed her as suffering from bronchial asthma, IBS and chronic back problems, reflecting a prognosis of "[g]ood."  *Id.*  Based upon his examination, Dr. Wooten recorded the following findings:

> From the physical examination I think the claimant would be able to be involved in activities which require sitting, standing, walking and stairs.  She can lift and carry probably with some restrictions. She can handle small objects without difficulty and bathe and care for herself.

AT 201.  Dr. Wooten also found no limitations with respect to vision, speech or hearing, and concluded that she retains full use of both upper

and lower extremities.  *Id.*

Plaintiff was orthopedically examined by agency consultant Dr.

Amelita Balagtas in February of 2001.  AT 207-09.  Dr. Balagtas

diagnosed plaintiff as suffering from bilateral hand pain, by history, "[r]ule

out lateral epicondylitis, left side" and rendered a prognosis of "fair".  *Id.*

Based upon her evaluation, Dr. Balagtas indicated that plaintiff would

have some limitations in performing activities requiring lifting and carrying,

particularly involving a left upper extremity, and should avoid activities

requiring repetitive motion with both hands.  *Id.*

Plaintiff was examined consultatively, again at the request of the

agency, on March 7, 2001 by ophthalmologist Dr. Christopher Gabriel.  AT

210-13.  Based upon his examination, Dr. Gabriel diagnosed the plaintiff

as suffering from macular drusen, "a form of macular degeneration[,]" but

noted that "[o]therwise her vision is quite good centrally and peripherally at

this time."  AT 211.

Apparently due to the passage of time since the earlier

examinations, the agency arranged for a more recent consultative

evaluation of the plaintiff on August 24, 2004 by Dr. Michael Holland.  AT

423-25.  Dr. Holland's examination of the plaintiff was largely

unremarkable, with recorded findings of normal ranges of motion, station and gait and no instability of the knees.  AT 425.  Based upon his observations, Dr. Holland assessed the claimant as having "a normal spirometry and normal exam."[3]  AT 425.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before The Agency

Plaintiff filed an application for SSI benefits on December 8, 2000. AT 84-87.  That application was denied in April of 2001.[4]  AT 60-64.

At plaintiff's request, a hearing was conducted on May 29, 2002 by ALJ Terrence Farrell to address her challenge of the denial of benefits. *See* AT 310.  That hearing led to ALJ Farrell's issuance of a decision on August 19, 2002, finding that plaintiff was not disabled at the relevant times, and thus upholding the denial of benefits.  AT 310-20.  Following the rejection by the Social Security Administration Appeals Council of

---

[3]       According to the ALJ's decision, the claimant was psychologically evaluated, also at the request of the agency, on July 9, 2004 by Thomas Osika, PhD. *See* AT 13.  Dr. Osika declined to make any diagnosis of a recognized impairment based upon his evaluation.  *Id.*  Plaintiff does not urge any psychological limitations in support of her request to this court to set aside the findings of no disability.

[4]       That filing followed an earlier application for disability insurance and SSI benefits.  AT 310.  The earlier application was denied at the initial level on February 15, 1996.  *Id.*

plaintiff's request for review, AT 322-24, and commencement of the

instant action, the matter was returned to the agency based upon the

inability to locate the tape recording made of the earlier hearing.

On September 28, 2004 a second hearing was conducted, this time

by ALJ Joseph F. Gibbons, to address the denial of benefits.[5]  AT 20-58.

Following that hearing, ALJ Gibbons issued a decision on October 12,

2004 finding that plaintiff was not disabled at the relevant times, and thus

upholding the denial of benefits.  AT 7-19.  In his decision, ALJ Gibbons

applied the now familiar, five part test for evaluating claims of disability

under the Act.  After noting at step one that plaintiff had not engaged in

substantial gainful activity since the alleged onset of her disability, and

reviewing the medical evidence in the record, ALJ Gibbons concluded at

step two that plaintiff suffers from several conditions of sufficient severity

to impair her ability to perform basic work functions, including

fibromyalgia/myofascial pain syndrome, epicondylitis, left thumb

osteoarthritis, macular drusen, asthma and IBS, but found that those

conditions, whether considered separately or in combination, were not of

---

[5]       On March 22, 2004 plaintiff filed a subsequent action for SSI benefits.
*See* AT 7.  That application was combined with the earlier December 8, 2000 SSI
application, and the two were considered together by the ALJ at the hearing and in his
resulting decision.  *Id.*

sufficient severity to meet or equal any of the presumptively disabling conditions listed in the regulations.  AT 13.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ next proceeded to review the record and determine plaintiff's residual functional capacity ("RFC").  Based upon that review, ALJ Gibbons concluded that plaintiff retains the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, and to stand, walk and/or sit for six hours in an eight hour work day, but that plaintiff is limited to only occasionally and not repetitively using her left hand in light of the lingering thumb condition.  AT 16.  After determining that plaintiff had not performed any past relevant work of significance, ALJ Gibbons proceeded to step five of the test and, utilizing the grid as a framework, concluded that there exist jobs in sufficient numbers within the national economy which plaintiff is capable of performing, based upon her RFC.  AT 16-18. The ALJ thus concluded that the plaintiff is not disabled within the meaning of the Act.  *Id.*  There is no indication in the record that plaintiff sought review of this latest ALJ determination by the Social Security Administration Appeals Council.[6]

_____

[6]     A decision of the agency is not final, and thus a claimant has not fulfilled his or her obligation to fully exhaust available, administrative remedies, until review by

B.    This Action

Plaintiff commenced this action on January 20, 2004, challenging the initial, unfavorable determination of ALJ Farrell.  Dkt. No. 1.  On May 11, 2004, the parties entered into a stipulation providing for a remand of the matter to the Commissioner under sentence six of 42 U.S.C. § 405(g), based upon the agency's inability to locate a tape recording of the May 29, 2002 hearing; that stipulation was approved by the court, and the matter remained open on the court's docket following its return to the agency for further proceedings.  Dkt. No. 6.

After a new hearing was conducted and a resulting determination issued, the matter was returned to this court.  Issue was thereafter joined by the Commissioner's filing on February 7, 2005 of an answer, accompanied by an administrative transcript of the evidence and proceedings before the agency.  AT 16, 17.  With the filing of plaintiff's brief on March 24, 2005, Dkt. No. 18, and that on behalf of the Commissioner on June 9, 2005, Dkt. No. 21, the matter is now ripe for

_____

the Appeals Council has been sought and denied.  20 C.F.R. § 404.981; *see Smith v. Barnhart*, 293 F.Supp.2d 252, 255 (E.D.N.Y. 2003); *Mathews v. Chater*, 891 F.Supp. 186, 188 (S.D.N.Y. 1995).  The exhaustion defense, which is not jurisdictional and thus waivable, *see Mendez v. Chater*, No. 96 CIV. 4290, 1997 WL 278056, at *2 (S.D.N.Y. 1997)*; Mathews*, 891 F.Supp. at 188, has not been raised by the Commissioner in this case.

determination, and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).[7]  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Scope Of Review

   A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

---

[7]      This matter has been treated in accordance with the procedures set forth
in General Order No. 18 (formerly, General Order No. 43) which was issued by the
Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28,
1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr.,
on September 19, 2001.  Under that General Order an action such as this is
considered procedurally, once issue has been joined, as if cross-motions for judgment
on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil
Procedure.

reached is arguably supported by substantial evidence.  *Martone*, 70 F.
Supp.2d at 148.  If, however, the correct legal standards have been
applied and the ALJ's findings are supported by substantial evidence,
those findings are conclusive, and the decision should withstand judicial
scrutiny regardless of whether the reviewing court might have reached a
contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586;
*Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13
F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. §
405(g).

The term "substantial evidence" has been defined as "'such relevant
evidence as a reasonable mind might accept as adequate to support a
conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,
1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197,
229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more
than a mere scintilla'" of evidence scattered throughout the administrative
record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To
determine on appeal whether an ALJ's findings are supported by
substantial evidence, a reviewing court considers the whole record,
examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

     B.     <u>Disability Determination: The Five Step Evaluation Process</u>

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] "  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

     C.    <u>The Evidence In This Case</u>

_____The lynchpin of the ALJ's finding of no disability is his conclusion

that with minor exceptions related to use of her left hand, plaintiff retains

the RFC to perform a full range of light work.[8]  Implicit in plaintiff's

---

     [8]    The agency has, by regulation, defined the exertional parameters of light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

challenge of the Commissioner's determination is her contention that this RFC finding is not supported by substantial evidence.[9]

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.

---

[9]    I note that even had plaintiff's RFC been found to be limited to sedentary work, she would nonetheless have been found to be not disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Rule 201.27.

*Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

The ALJ's RFC finding in this case was derived in large part from the opinions of plaintiff's own treating physician, Dr. Beaty, who reported that plaintiff could lift and carry twenty pounds occasionally, and ten pounds frequently.  AT 227.  Dr. Beaty's opinions in this regard are generally consistent with those of examining consultative physicians, including Dr. Wootan and Dr. Balagtas.  *See* AT 198-201, 207-09.

During the administrative hearing held by ALJ Gibbons, plaintiff testified to experiencing pain.  *See*, *e.g.*, AT 32, 43, 45, 47-48.  That testimony, if credited, would significantly undermine the ALJ's light work RFC finding.  In his decision the ALJ tersely discounted that subjective testimony without giving any explanation regarding his reasoning.  AT 18. In her challenge to the ALJ's finding, the plaintiff attacks his rejection of her subjective pain complaints as being neither supported by substantial

evidence, nor properly explained.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant. *Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*). Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain*.  See Mimms v. Heckler*, 750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. & Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[10]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

    After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

----

[10]      In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the
existence of a medical impairment which would reasonably be expected to produce the
pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence. *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be disturbed on court review. *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her condition.  The fact that she suffers from discomfort, to be sure, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

It is difficult to discern from plaintiff's brief what limitations she associates with her pain.  Careful review of plaintiff's testimony during the hearing fails to reveal any helpful explanation of the pain which she suffers and its effects upon her ability to perform work functions.

Plaintiff has been diagnosed as suffering potentially from myofascial pain syndrome/fibromyalgia, a condition which can cause a victim to experience pain not necessarily associated with objective symptomology.

-25-

223-24. Fibromyalgia has been recognized as a potentially severe

impairment that may support a claim of disability under the Act.[11] *Green-*

*Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003); *Lisa v. Secretary of*

*Health & Human Servs.*, 940 F.2d 40, 44-45 (2d Cir. 1991). Addressing

the condition, the Seventh Circuit has explained:

> Fibromyalgia . . . [is] a common, but elusive and mysterious
> disease, much like chronic fatigue syndrome, with which it
> shares a number of features. Its cause or causes are
> unknown, there is no cure, and of greatest importance to
> disability law, its symptoms are entirely subjective. There are
> no laboratory tests for the presence or severity of fibromyalgia.
> The principal symptoms are "pain all over," fatigue, disturbed
> sleep, stiffness, and – the only symptom that discriminates
> between it and other diseases of a rheumatic character –
> multiple tender spots, more precisely 18 fixed locations on the
> body (and the rule of thumb is that the patient must have at
> least 11 of them to be diagnosed as having fibromyalgia) that
> when pressed firmly cause the patient to flinch. All these
> symptoms are easy to fake, although few applicants for
> disability benefits may yet be aware of the specific locations
> that if palpated will cause the patient who really has
> fibromyalgia to flinch. . . . Some people may have such a

---

[11]     Fibromyalgia is described by a leading medical source as:

[a] syndrome of chronic pain of musculoskeletal origin but uncertain
cause. The American College of Rheumatology has established
diagnostic criteria that include pain on both sides of the body, both above
and below the waist, as well as in an axial distribution (cervical, thoracic,
or lumbar spine or anterior chest); additionally there must be point
tenderness in at least 11 of 18 specified sites.

Stedmans Medical Dictionary (27th ed. 2000). Fibromyalgia is also commonly referred
to as fibrositis. *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003).

severe case of fibromyalgia as to be totally disabled from working, but most do not[.]

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (internal citations omitted).

As may be gathered, by its very nature fibromyalgia is not always readily susceptible to detection or verification through clinical testing or other objective means. For this reason, courts have found that the unavailability of clinical tests alone is not a basis for an ALJ to reject a physician's diagnosis of fibromyalgia on the ground that it is not supported by objective clinical findings. *See Younger-Barnhart*, 335 F.3d at 168; *Cruz v. Apfel*, 97-CV-1170, 1998 U.S. Dist. LEXIS 23385, at *22-*23 (N.D.N.Y. Nov. 4, 1998) (DiBianco, M.J.) (citing *Lisa*, 940 F.2d at 44), *adopted*, 1998 U.S. Dist. LEXIS 23384 (N.D.N.Y. Dec. 21, 1998). As was explained by the Second Circuit,

> [i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather, it is a process of diagnosis by exclusion and testing of certain "focal tender points" on the body for acute tenderness which is characteristic in fibrositis patients.

*Lisa*, 940 F.2d at 45 (quoting *Preston v. Secretary of Health & Human*

*Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988)).

The relatively few notations in plaintiff's medical records making reference to the diagnosis of fibromyalgia/myofascial pain syndrome reflect that the condition has responded well to medication and is consistently described as stable or improving.  AT 243, 271-75, 286, 288, 396.  Moreover, aside from occasional soft tissue tender points, examination findings have proven negative in discovering any trigger points associated with the disease.  AT 223, 242, 271-72, 275, 425.

One of the bases for plaintiff's challenge to the portion of the ALJ's decision relative to pain is his apparent summary rejection of her subjective complaints, succinctly explained as based upon finding that "the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of [his] decision."  AT 18.  Mere conclusory statements that an ALJ has taken into account, but rejected as not credible, an individual's allegations of pain are insufficient in the face of a judicial challenge.  *See* Social Security Ruling ("SSR") 96-7P.  The governing regulations require more than mere summary recitation of the factors identified as relating to pain, contemplating instead careful and well-explained consideration of whether the plaintiff suffers from a

-28-

medically determinable condition that could be reasonably expected to produce the symptomology established, as well as of other potentially important and highly relevant factors. *See id.*

In this case ALJ Gibbons' rejection of plaintiff's pain complaints, to the extent that they could be construed as potentially precluding her ability to perform a full range of light and sedentary work, is not adequately explained, in accordance with the regulations. Since plaintiff has been diagnosed as suffering from an impairment capable of producing the pain claimed by the plaintiff, the ALJ was required to analyze plaintiff's pain complaints and explain his reasons for rejecting them. *Martone*, 70 F. Supp.2d at 151 (citations omitted). His failure to do so warrants reversal of the finding of no disability and remand of the mater to the agency for further consideration.

## IV.   SUMMARY AND RECOMMENDATION

Despite plaintiff's documented history of symptoms consistent with a diagnosis of fibromyalgia, the ALJ failed to fulfill his obligation to explain the basis for his rejection of plaintiff's pain complaints. Since the finding of no disability hinges in part upon that rejection, the matter should be remanded to the agency for further consideration.

Based upon the foregoing it is

RECOMMENDED that plaintiff's motion for judgment on the pleadings be GRANTED, the Commissioner's determination VACATED and the matter REMANDED to the agency for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy of this Report and Recommendation upon the parties by regular mail.

Dated:      May 10, 2006
            Syracuse, NY

G:\socialsecurity\larock.wpd